[Cite as *In re Disqualification of Burge,* 136 Ohio St.3d 1205, 2013-Ohio-2726.]

IN RE DISQUALIFICATION OF BURGE.

THE STATE OF OHIO *v*. JALOWIEC.

THE STATE OF OHIO *v*. WEBER.

THE STATE OF OHIO *v*. FINE.

[Cite as *In re Disqualification of Burge,* 136 Ohio St.3d 1205,

2013-Ohio-2726.]

*Judges—Affidavit of disqualification—R.C. 2701.03—Affidavit granted in part—*
*Judge's comments to press and failure to respond to certain allegations in*
*affidavit necessitate removal to avoid appearance of impropriety—Blanket*
*order of disqualification denied.*

(No. 13-AP-027—Decided May 13, 2013.)

ON AFFIDAVIT OF DISQUALIFICATION in Lorain County Court of Common Pleas

Case Nos. 95CR046840, 11CR082129, and 12CR086127.

————————————

**O'CONNOR, C.J.**

{¶ 1}  Anthony Cillo, counsel for the state in the above-captioned cases, has filed two affidavits under R.C. 2701.03 seeking to disqualify Judge James M. Burge from presiding over these cases and all future cases in which Cillo appears as counsel of record.

{¶ 2}  Cillo claims that his "complex and often contentious history" with Judge Burge, combined with the judge's recent public comments regarding Cillo's involvement in an alleged disciplinary investigation of the judge, have created an appearance of impropriety requiring the judge's disqualification.  Cillo also alleges that Judge Burge has expressed a fixed anticipatory judgment in the *State v. Jalowiec* proceedings.

**{¶ 3}** Judge Burge has responded in writing to the allegations in Cillo's affidavits. He denies any bias against Cillo, disagrees that an appearance of impropriety exists, and states that he has not formed or expressed any opinion in the *Jalowiec* case.

**{¶ 4}** For the reasons explained below, Judge Burge is disqualified from presiding over the *Jalowiec* proceeding, but Cillo's request for a blanket order of disqualification in all other current and future cases is denied.

### State v. Jalowiec

**{¶ 5}** The *Jalowiec* case is pending on the defendant's motion for a new trial. Cillo alleges that Judge Burge expressed an opinion on that motion and therefore should be removed. In support of the allegation, Cillo submits the affidavit of Nick J. Hanek, an assistant prosecuting attorney assigned to Judge Burge's courtroom. Hanek avers that after Cillo moved for Judge Burge to voluntarily recuse himself from the *Jalowiec* case, the judge commented to Hanek: "He [Anthony Cillo] thinks that I would make a ruling based on him when there's a man who certainly deserves a new trial." Judge Burge denies making the statement, declaring that he "never expressed to any assistant prosecutor, including the assistant prosecutor assigned to [his] court, or to anyone else, that Jalowiec is entitled to be granted a new trial."

> If a judge's words or actions convey the impression that the judge has * * * reached a "fixed anticipatory judgment" that will prevent the judge from presiding over the case with "an open state of mind * * * governed by the law and the facts," *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, 469, 58 O.O. 315, 132 N.E.2d 191, then the judge should not remain on the case.

*In re Disqualification of Synenberg*, 127 Ohio St.3d 1220, 2009-Ohio-7206, 937 N.E.2d 1011, ¶ 24. Here, the record contains conflicting affidavits regarding whether Judge Burge made this statement to Hanek. Typically, such conflicting evidence is insufficient to overcome the presumption of a judge's impartiality. *See, e.g., id.* at ¶ 25 ("in the wake of the conflicting stories presented here, I cannot conclude that the judge should be removed * * *").

{¶ 6} But Judge Burge did not rest with simply submitting his formal response to Cillo's affidavit of disqualification. Judge Burge also commented to the media about Cillo's allegation, which then triggered the filing of Cillo's supplemental affidavit with more allegations of bias and prejudice against the judge. Specifically, despite the requirements of Jud.Cond.R. 2.10, Judge Burge is quoted in two newspapers as stating, "I don't believe an assistant [county prosecutor] told him [Cillo] that and if he did, it would be false," and "[w]hen a person ascribes dishonest motives to another, it's usually because the accuser has dishonest motives himself and believes that everyone behaves the same way he does." The unfortunate result has been a public dispute between the administrative judge of the Lorain County Common Pleas Court and the chief of the prosecutor's criminal division played out in the press.

{¶ 7} "The proper test for determining whether a judge's participation in a case presents an appearance of impropriety is * * * an objective one. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality." *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8. The language used by Judge Burge in his media statements could cause the reasonable and objective observer to conclude that the judge has become Cillo's adversary, thereby creating a possibly intolerable atmosphere between the judge and the prosecutor in the courtroom. *See* Flamm, *Judicial Disqualification*, Section 15.7, 435 (2d Ed.2007). This public dispute cannot be allowed to overshadow the

pending *Jalowiec* case, which has already endured a stay of the scheduled hearing for this affidavit-of-disqualification proceeding. "When the case becomes about the judge rather than the facts of the case and the law, it is time for the judge to step aside," *In re Disqualification of Saffold*, 134 Ohio St.3d 1204, 2010-Ohio-6723, 981 N.E.2d 869, ¶ 2, or, as in this case, it is time for the judge to be removed when he refuses to step aside.

{¶ 8} In addition to the media statements, other factors are present that support disqualification. For example, Judge Burge did not respond to some of the allegations in Cillo's supplemental affidavit, including the claim that Judge Burge "discarded the traditional route of reassignment in Jalowiec's case in order to preside over the case himself." "[A] judge's failure to respond to allegations of bias and prejudice may result in the judge's disqualification to avoid the appearance of impropriety." *In re Disqualification of Corrigan*, 94 Ohio St.3d 1234, 1235, 763 N.E.2d 602 (2001). Further, Judge Burge has been assigned to this case for a relatively short amount of time, which lessens the disruptive impact of disqualification. *Compare In re Disqualification of Nicely*, 135 Ohio St.3d 1237, 2012-Ohio-6290, 986 N.E.2d 1, ¶ 8 (disqualification of judge who presided over eight-year litigation with a 15-day trial warranted only under extraordinary circumstances clearly showing a fixed anticipatory judgment). Given the unique combination of facts here, prudent grounds exist to remove Judge Burge.

{¶ 9} Reassignment of the case to a new judge, however, should not be interpreted as implying that Judge Burge actually expressed an opinion in the proceeding, holds a personal bias against Cillo, or engaged in any unethical conduct. Judge Burge steadfastly denies making the alleged comment to Hanek, and it is quite possible that there was a misunderstanding of what was said and meant. Nevertheless, even in cases in which no evidence of actual bias or prejudice is apparent, disqualification is often necessary to avoid the appearance of impropriety and to ensure the parties' and the public's "absolute confidence in

the fairness of [the] proceedings." *In re Disqualification of Sheward*, 77 Ohio St.3d 1258, 1260, 674 N.E.2d 365 (1996); *see also Saffold* at ¶ 6 (disqualification appropriate when the "public's confidence in the integrity of the judicial system is at stake").

{¶ 10} Accordingly, Judge Burge is disqualified from the *Jalowiec* case to avoid even the appearance of impropriety.

### Cillo's requested blanket order of disqualification

{¶ 11} In support of his request for a blanket order of disqualification, Cillo claims that prior to Judge Burge taking the bench, he and the judge opposed each other in high-profile, tension-filled cases, some of which resulted in Cillo moving for sanctions against then-attorney Burge. Cillo alleges that after Judge Burge was elected to judicial office, the relationship "became even more fraught with tension." For example, Cillo asserts that in 2007, the judge entered an order finding him in contempt, a decision later criticized by an appellate court judge, and in 2011, Judge Burge made questionable evidentiary rulings in a three-judge death-penalty proceeding. Cillo's supplemental affidavit lists more recent judicial conduct that Cillo labels "less than professional."

{¶ 12} In addition, Cillo contends that Judge Burge recently impugned his integrity in a public comment to the parole board about an alleged disciplinary investigation.[1] Cillo points to a newspaper article attributing the following comment to Judge Burge regarding a statement that the judge claimed Cillo had made to him: "I have been told by the Supreme Court Disciplinary Counsel that Mr. Cillo denies having said that to me." Cillo argues that through this comment,

---

1. Under Gov.Bar R. V(11)(E)(1), all proceedings and documents relating to investigation of disciplinary grievances are "private." The record here contains newspaper articles stating that Judge Burge is the subject of a disciplinary inquiry, and Judge Burge's response to Cillo's supplemental affidavit seems to indicate that he has received a letter of inquiry from disciplinary authorities. The Chief Justice has no knowledge of whether any such disciplinary inquiry existed or is ongoing, and this entry should not be interpreted as confirming the existence of any such inquiry.

Judge Burge "published *his belief*" that Cillo is "an untruthful person." (Emphasis sic.) Cillo similarly interprets the comment as suggesting that Cillo "lied" to disciplinary counsel and will be "a witness against [the judge] in disciplinary proceedings."

{¶ 13} Cillo's arguments are unconvincing. Judges are presumed to be capable of putting aside old disagreements with former opposing counsel and attorneys appearing before them, and nothing in Cillo's affidavits would lead a reasonable person to conclude that Judge Burge has developed such a strong personal bias against Cillo—based on their history—that the judge would be unable to preside fairly over cases involving him. And as for Judge Burge's recent comment to the parole board, it is a stretch to interpret the comment as suggesting that Cillo "lied" to investigators. Similarly, the comment does not demonstrate that Cillo will be a witness against the judge in a disciplinary proceeding—mostly because there is no evidence that a formal disciplinary complaint has been filed. At this point, Cillo's claims are based on speculation and are therefore insufficient to establish bias or an appearance of bias. *In re Disqualification of Flanagan*, 127 Ohio St.3d 1236, 2009-Ohio-7199, 937 N.E.2d 1023, ¶ 4 ("Allegations that are based solely on hearsay, innuendo, and speculation * * * are insufficient to establish bias or prejudice").

{¶ 14} In addition, the cases cited in Cillo's affidavit do not support a blanket order of disqualification. For example, Cillo relies on *In re Disqualification of Hoover*, 113 Ohio St.3d 1233, 2006-Ohio-7234, 863 N.E.2d 634, but that judge was ultimately removed because his response to an affidavit of disqualification was "laced with invectives against [the affiant]" and "bristle[d] with caustic phrases about [the affiant]," suggesting that the judge was not able to view the affidavit objectively and calling into question his ability to preside fairly over the affiant's cases. *Id.* at ¶ 4. Judge Burge's formal responses to Cillo's affidavits do not show any similar resentment towards Cillo. In fact, the judge

describes Cillo as "a capable trial attorney that is always prepared, organized, technically sound, credible and dedicated to his cause."

{¶ 15} Similarly, *In re Disqualification of O'Neill*, 100 Ohio St.3d 1226, 2002-Ohio-7476, 798 N.E.2d 12, does not support the conclusion that an appearance of impropriety exists here. In *O'Neill*, the affiant was a witness to alleged judicial misconduct "contained in the pending disciplinary complaint" against the judge, and there was a strong indication that the affiant would be the "subject of vigorous cross-examination by [the judge's] counsel regarding [affiant's] perception of the events alleged in the disciplinary complaint." *Id.* at ¶ 5. In addition, Judge O'Neill characterized the disciplinary charges against her as "politically motivated," and she had been publicly critical of the individuals involved in the disciplinary matters. *Id.* Except for Judge Burge's publicly critical comments of Cillo, the record here is devoid of any of these same facts. Most important, there is no evidence of a pending disciplinary complaint against Judge Burge, and therefore it remains speculative whether Cillo would ever be involved in a disciplinary matter against the judge or subjected to his cross-examination.

{¶ 16} At bottom, there is no doubt that Cillo—rightly or wrongly—sincerely believes that an appearance of impropriety exists, and "[i]t is of vital importance that the litigant should believe that he will have a fair trial." *State ex rel. Turner v. Marshall*, 123 Ohio St. 586, 587, 176 N.E. 454 (1931). That principle, however, must be balanced against the rule that "[t]he statutory right to seek disqualification of a judge is an extraordinary remedy." *In re Disqualification of Hunter*, 36 Ohio St.3d 607, 608, 522 N.E.2d 461 (1988). The significance of that remedy is heightened here because Cillo acts as counsel of record in all capital cases in Lorain County and "handles the cases where the most serious crimes have been perpetrated." Accordingly, Cillo's requested remedy will effectively remove Judge Burge from presiding over all capital cases and

other serious criminal matters. At this point, Cillo's speculative allegations are insufficient to issue such an extraordinary remedy.

{¶ 17} "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Cillo has failed to submit compelling evidence to overcome those presumptions, and therefore he has failed to establish an appearance of impropriety warranting a blanket order of disqualification.

### Conclusion

{¶ 18} Two of Cillo's cases remain pending before Judge Burge: *State v. Weber* and *State v. Fine*. Unlike the *Jalowiec* case, Cillo did not set forth any specific allegations of bias or prejudice relating to these cases. Judge Burge states that the parties in *Weber* are attempting to resolve the case without trial, and the docket in *Fine* indicates that a trial is scheduled for August 2013. It is expected that by that time, Judge Burge and Cillo will have worked to improve their professional relationship to reassure the citizens of Lorain County of the fairness of their justice system. The public deserves that from its public officials.

{¶ 19} For the reasons explained above, Cillo's affidavit of disqualification is granted with respect to the *State v. Jalowiec* case, and it is ordered that Judge Burge participate no further in those proceedings. The assignment of another judge will be addressed in a separate entry.

{¶ 20} Cillo's affidavit with respect to the *Weber* and *Fine* cases is denied, and those cases may proceed before Judge Burge. Cillo's request for a blanket order of disqualification is denied.

_____